Jason Crews
1515 N Gilbert Rd Ste 107-204
Gilbert, AZ 85234
602-295-1875
Jason.crews@gmail.com

```
    FILED   ___ LODGED
___ RECEIVED ___ COPY

    JUN 0 1 2023

CLERK U S DISTRICT COURT
  DISTRICT OF ARIZONA
BY_____DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE DISTRICT ARIZONA

PHOENIX DIVISION

Jason Crews,

        Plaintiff,

vs.

Crypto Freedom PAC;

Club For Growth;

And

David McIntosh,

        Defendants.

Case No.:   **CV23-00970-PHX-DLR**

First Amended Complaint for Violations of:

1.    NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.]

2.    WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.]

DEMAND FOR JURY TRIAL

COMPLAINT- 1

## COMPLAINT

### Preliminary Statement

1. Plaintiff Jason Crews ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance calling practices. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2. The Defendants in this action The Crypto Freedom PAC, Club For Growth, and David McIntosh orchestrated placing at least one illegal campaign-related prerecorded "robocalls" to Plaintiff's telephone number.

3. Plaintiff never consented to receive such messages.

### Parties

4. Plaintiff Jason Crews is and was a resident of Maricopa County, Arizona at all relevant times, and a resident of this District.

5. Defendant Crypto Freedom PAC ("Crypto"), is a Political Action Committee (PAC) which was organized to "…elect candidates for Congress who will fight for crypto freedom and against any government overreach of digital assets."

6. Defendant Club For Growth ("Growth"), is incorporated in the District of Columbia, whose "Single mission [is] Helping elect candidates for Congress who will fight for crypto freedom and against any government overreach of digital assets."

7. Defendant David McIntosh ("McIntosh") is, *inter alia*, was at all times relevant the chairman of Crypto Freedom PAC and president of Club for Growth and directed the illegal robocalls complained of herein.

### Jurisdiction & Venue

8. The Court has federal question subject matter jurisdiction over these TCPA claims: *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

COMPLAINT- 2

9.  The venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the calls to Plaintiff were placed into this District.

### The Telephone Consumer Protection Act

8.  In 1991, Congress enacted the TCPA to regulate the explosive growth of the automated calling industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]": Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

9.  Under the TCPA, an individuals candidate such as McIntosh may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, Case 2:22-cv-02724-ER Document 1 Filed 07/11/22 Page 2 of 11 3 shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as of that person. 47 U.S.C. § 217 (emphasis added).

10. When considering individual liability under the TCPA, other Courts have agreed that an officer or individual involved in the telemarketing at issue may be personally liable under the TCPA. See, e.g., *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute.") (cleaned up) and *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

COMPLAINT- 3

11. McIntosh personally participated in the complained-of actions by personally directing and authorizing the scripting and selecting of calls to be made, selecting, and orchestrating the calling strategy, including by choosing to use pre-recorded calls.

## Factual Allegations

12. To generate promote their mission Defendants relied on prerecorded "robocalls."

13. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

14. The phone number (602) 295-XXXX ("Cell Number") belongs to Plaintiff.

15. The Cell Number has been on the Do-Not-Call registry since November 7, 2006.

16. Despite this registration, Defendants sent a prerecorded "robocall" to Plaintiff on November 7, 2022 with an Automated Telephone Dialing Systems ("ATDS").

17. The Cell Number is assigned to a cellular phone used exclusively for personal residential purposes.

18. Plaintiff did not consent to receive prerecorded or automated messages to his Cell Number.

19. Plaintiff did not consent to receive telephone calls via ATDS.

20. The Cell Number is not associated with a business.

Calls to Plaintiff

21. Plaintiff had no prior business relationship with Defendants.

22. On or about November 7, 2022, at 11:22 pm, Plaintiff received a phone call presenting caller ID (602)894-9445 to the Cell Number.

23. The pre-recorded calls both stated:

> Which is better? A or B. A or B. America, you have one job. Vote. We can choose something better. A or B.

24. Plaintiff never provided his consent for or requested these calls.

COMPLAINT- 4

25. The call was not necessitated by any emergency.

26. Plaintiff was harmed by these calls. He was temporarily deprived of the legitimate use of his telephone, and his privacy was improperly invaded. Plaintiff was charged for the calls. Moreover, the calls injured Plaintiff because they were frustrating, obnoxious, annoying, and a nuisance, and they disturbed the solitude of Plaintiff.

### Defendants' Use of an ATDS

27. The calls were conducted using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator: *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

28. The Third Circuit recently clarified that "Congress envisioned a broad understanding of 'equipment'" that constitutes an ATDS. It also clarified that the analysis of whether an ATDS was used in violation of the TCPA centers around "whether the Defendants employ[s] [ATDS] capacities to make automated calls": *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 873, 878 (3d Cir. 2022). In so doing, it held that Congress intended to "ban all autodialed calls" because Congress "found autodialer technology to be uniquely harmful": Id. at 879 (cleaned up).

29. In enacting the ATDS prohibition, the Third Circuit cited favorably to Congressional understanding "that telemarketers could transform ordinary computers into autodialers through minor and inexpensive modifications," including by "relying on computerized databases containing telephone numbers during their dialing campaigns": Id. at 880 (cleaned up). The Third Circuit held that, in passing the TCPA's ATDS prohibition, Congress intended to remedy the problems caused by callers using computer software to dial numbers randomly or sequentially from a list or database: *Id.*

COMPLAINT- 5

30. The system(s) that Defendants used to place the calls to Plaintiff is/are an ATDS because it would be illogical to dial a number manually, have Plaintiff answer the phone, and only then connect Plaintiff to a human being.

31. Audible pauses, clicks, and beeps are hallmark indicia of ATDS systems. This supports the inference that Defendants used an ATDS, such as one that "use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a pre-produced list": *Facebook*, 141 S. Ct. at 1171 n.7.

32. Other courts have held, post-Facebook, that allegations similar to those herein of the absence of a relationship between the parties, and the random nature of the automation device (such as the ability to randomly generate caller ID numbers), are all indicia of use of a random or sequential dialing device. This gives rise to the inference at the pleadings stage that an ATDS was used to make the calls: *Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 U.S. Dist. LEXIS 100125 at *11 (E.D. Pa. May 26, 2021).

33. No facts exist here to support the conclusion that Defendants was calling from a curated list of his past customers. In contrast to a company that dials calls en masse to multiple individuals from a list of telephone numbers (as here), a company that calls its existing customers utilizing an imported customer list does not place calls using an ATDS. Such calling uses a database targeting existing customers' information rather than computer-generated tables or lists of individuals to be called: *Panzarella*, 37 F.4th at 881–882.

34. Plaintiff is ignorant of the exact process by which the system(s) used by Defendants operates other than by drawing the reasonable inference and alleging that the system(s) stores or produces telephone numbers randomly or possibly sequentially based on the facts ascertainable from the calls Plaintiff received, as outlined above. Indeed, as at least one district court explained, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage": *Gross v. GG Homes*,

COMPLAINT- 6

*Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); accord *Miles v. Medicredit, Inc.*, No. 4:20-cv- 01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

### Defendants' Conduct Was Knowing and Willing

35. Defendants knew his actions were in violation of the TCPA and willfully continued his conduct.

### The TCPA Prohibits All Automated Calls to Protected Numbers

36. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automated telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the party is charged for the call": 47 U.S.C. § 227 (b)(1)(A)(iii).

37. Congress singled out these services for special protection because Congress realized their special importance in terms of consumer privacy (as is the case with cellular phones): *Barr v. Am. Ass'n of Pol. Consultants Inc.*, 140 S. Ct. 2335, 2356, (2020) (Gorsuch, J. & Thomas, concurring in part and dissenting in part).

38. According to findings by the Federal Communications Commission ("FCC"), which is the agency Congress vested with the authority to issue regulations implementing the TCPA, such messages are prohibited because, as Congress found, automated or prerecorded messages are a greater nuisance and invasion of privacy than live ones, are costly, and are inconvenient.

39. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). 47 U.S.C. § 227(b)(1)(3).

40. These causes of action apply to users of any of four protected services (pager, cellular, specialized mobile radio [i.e., radio telephony locator beacon or dispatch system], or another radio common carrier service [i.e., ship-to-shore or air-to-ground]), or

COMPLAINT- 7

any service, including residential, VoIP, and landline services, for which the called party is charged: *Lynn, Monarch Recovery Mgmt. Inc.*, 953 F. Supp. 2d 612, 623, (D. Md. 2013).

41. "Non-Emergency pre-recorded voice or autodialed calls to the destinations enumerated in 47 U.S.C. § 227(b)(1)(A) are permissible only with the prior express consent of the called party."

42. U.S.C. § 227(c)(2) states, "No person or entity shall initiate any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government" and defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person…": U.S.C. § 227(f)(15).

43. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used": In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

44. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered:

> [A] Consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the

COMPLAINT- 8

written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

45. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

46. 47 C.F.R. § 64.1200 extends 47 U.S.C. § 227 and establishes several delivery restrictions. It states, "No person or entity may ... [e]xcept as provided ... initiate any telephone call ... using an automatic telephone dialing system or an artificial or prerecorded voice."

47. 47 C.F.R. § 64.1200(a)(1) specifically protects the following: "emergency telephone line," "guest room or patient room of a hospital, health care facility, elderly home, or similar establishment," and/or "cellular telephone service." 47 C.F.R. § 64.1200(a)(2) further prohibits entities from "initiat[ing], or caus[ing]to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described... "

48. The National Do-Not-Call Registry allows consumers to register their telephone numbers and thereby indicate their desire to not receive telephone solicitations at those numbers: 47 C.F.R. § 64.1200(c)(2).

49. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator": *Id.*

50. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provide a private right of action against any entity making those calls or "on whose behalf" such calls are promoted: 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

51. 47 C.F.R. § 64.1200(d) states, "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity

COMPLAINT- 9

has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." It goes on to establish specific "minimum standards":

(1) "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand…"

(2) "[P]ersonnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list."

(3) "If a person or entity making a call for telemarketing purposes … receives a request … not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name … and telephone number on the do-not-call list at the time the request is made … must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made."

(4) "A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

(5) "A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls."

## Claims

### Count One

52. Plaintiff incorporates the foregoing allegations as fully set forth herein.

53. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute violations of the TCPA, 47 U.S.C. § 227, by sending calls, except for emergency purposes, to Plaintiff's telephone number using a prerecorded voice.

54. As a result of his unlawful conduct, Defendants invaded Plaintiff's personal privacy, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B),

entitling him to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop his illegal calling campaign.

55. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or his affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls or sending messages, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

56. Defendants' violations were willful and/or knowing.

### Relief Sought

WHEREFORE, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers using an artificial or prerecorded voice and/or ATDS.

B. Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

C. Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED on this May 29, 2023.

_____
Jason Crews

COMPLAINT- 11